266

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

JAN 14 1999

Michael N. Milby, Clerk of Court
By Deputy Clerk

TEXAS MUNICIPAL LEAGUE GROUP    *
BENEFITS RISK POOL, ET AL       *
                                *
VS.                             *       CIVIL ACTION
                                *       NO. B-91-166
HARTFORD LIFE AND ACCIDENT      *
INSURANCE COMPANY AND HARTFORD  *
FIRE INSURANCE COMPANY          *

MEMORANDUM AND OPINION AND ORDER

RE; (1) RECONSIDERATION, (2) SUPERSEDEAS BOND

Once again, the further interpretation of the insurance contract is required by Hartford's Motion to Reconsider the Court's Memorandum Opinion and Order of June 6, 1998.

Several initial observations are appropriate:

First:  The interpretation of the contract was made after trial, a somewhat unique circumstance.

Second: There is no moral position regarding the contract interpretation. Neither side's position is either fair or unfair.

Third:  The insurance company drafted the contract and to the extent it is capable of multiple interpretations, it should be construed against the scrivener.

Hartford states the issue as:

"Who bears the cost of medical expenses incurred before September 30, 1989, but not paid on or before that date?"

1

Hartford argues the question is answered in paragraph 3(g). But paragraph 3(g) does not say which party ultimately bears the cost of such expenses, but merely states how Hartford is to be reimbursed for the expense payments it makes. Hartford by paragraph 3(g), is obligated to make the payments. Paragraph 3(f) provides that Beaumont must provide funds to satisfy all benefits "paid or payable" by Hartford up to the date of termination. So 3(g) states how to secure the reimbursement obligation of Beaumont under 3(f).

Hartford now urges that the waiver letter of August 20, 1987 controls the intent of the parties as to what happens on termination of the MPP and since it is silent as to the Plan Liability Limit, the Plan Liability Limit does not apply. This argument, however, is not supported by the waiver letter itself, which deals only with 3(d) of the contract which the parties acknowledge should have read 3(g). And further, the letter deals with only one aspect of 3(g) which is the requirement of a "letter of credit" to secure the reimbursement of Hartford for "all benefits which are due or become due under the Group Policy(ies)". It has no effect on any other part of MPP. The waiver letter only waived the "letter of credit". All other provisions of the MPP were unaffected, including the Plan Liability Limit.

2

Hartford also asserts arguments based on language in Paragraph 3(a) "governing events <u>while the MPP is in effect</u>".[1] The underlined clause does not necessarily mean the time covered by the contract. The MPP would clearly be in effect and deal with health care provided to beneficiaries during the term but not paid for during the term. This distinction governs everything but is ignored by Hartford. Hartford essentially argues that "while the MPP is in effect", governs applicability of the Plan Liability Limit which "is the 'insurance' limit on Beaumont's liability <u>prior to termination</u>."[2] "Prior to termination" is constantly interpreted by Hartford as before September 30, 1989, but ignores that there were obligations incurred under the contract before September 30, 1989, but requiring performance after September 30, 1989. Paragraphs 3(f) and (g) dealt with those.

The maximum liability of Beaumont to pay benefits provided to beneficiaries "which become due to or for Plan Participants while this agreement is in effect" is the Plan Liability Limit.[3] There is no basis in this language to permit the conclusion that the Plan Liability Limit applies only to payments made during the contract year. If such were the intention, the language would be "benefits paid during the year" rather than benefits "which become

---

[1] Page 5 of Hartford's Motion for Reconsideration. Emphasis is in the original.

[2] Page 5 of the Motion for Reconsideration. Emphasis is in the original.

[3] Paragraph 3(a).

3

due to or for plan participants while this agreement is in effect." The agreement does not terminate all obligations at the end of the policy period, but specifically provides for obligations of both parties after the expiration of the contract period even if based on medical benefits provided during the year.

And this only makes sense. Why would a reasonable person drafting a MPP set a standard such as "benefits paid during a year" which standard would be in the control of a paying agent -- Hartford here -- which could be manipulated by timing payments to change the ultimate burden? If interpreted as the Court does based upon the contract language, the obligations under the MPP would be determined by when the medical and other services were provided to the beneficiaries -- a standard outside the control of either Beaumont of Hartford.

Section 3(d) of the MPP is not limited to benefits paid by the end of the contract year, but includes benefits paid on account of benefit obligations incurred during the contract year and paid on Beaumont's behalf after the end thereof.

Paragraph 3(d) begins: "If at the end of any contract year, the cumulative effect of benefits we have paid on your behalf and for which you have reimbursed us in accordance with paragraph 7 .... exceeds the Plan Liability Limit for that year, we agree to reimburse to you the amount of such excess." If it was limited, as Hartford argues, it would not include at the end of the year amounts Hartford had paid during the year, but which had not been

4

reimbursed after the end of the year. Reimbursement was promised by Paragraph 7 to be made "within 2 banking days of request" by Hartford or Hartford's bank. Any payments made by Hartford, but not reimbursed before the end of the year would not, according to Hartford's interpretation of paragraph 3(d) count toward the Plan Liability Limit. This could not be what the parties intended. It compels the conclusion that the language "at the end of any contract year" in paragraph 3(d) does not mean "at the moment the year ends" but rather means "after the end of any contract year."

Hartford claims that Beaumont had no right to reject paragraph 3(g) and arrange for payment by someone other than Hartford (Greentree, to be specific) of the claims incurred during the contract year which had not been received by Hartford by the end of the contract year. Hartford never objected to this at the time or at the trial. And this is quite understandable because the liability was fixed at that time by the objective actions of third parties within the contract year; i.e. the providing of services to beneficiaries. Hartford, Greentree and Beaumont all had the same objective -- paying all valid claims not yet paid-- claims for services rendered during the contract year for which bills had not been received by the end of that year.

Nothing Hartford has put forth in its reconsideration motion changes that or makes that unobjected, indeed, consented to arrangement unfair.

5

And finally Hartford claims the Plan Liability Limit does not apply to benefits paid under paragraph 3(g). Not one word in the contract says that. It is Hartford's interpretarion of silence on the subject. But the contract is not silent. Paragraph 3(a) provides specifically that Beaumont is to "provide funds sufficient to pay all benefits which <u>become due or for Plan Participants</u> while the agreement is in effect. However your payment shall be subject to maximums called the Plan Liability Limit and if shown in the Schedule, the Participant Liability Limit". (Underlining supplied). So the actual language applies the Plan Liability Limit to benefits "which become due or for" Plan Participants. The decision of the Court applies the Plan Liability Limit exactly how the contract says it is to apply -- to benefits which become due or for participants while the agreement is in effect.

Moreover, the fact that they were paid through Greentree does not change the fact that they were incurred during the contract and therefore subject to the Plan Liability Limit.

There is no reason why the Plan Liability Limit cannot co-exist with the Plan Benefit Extension Limit. The Plan Liability Limit is applicable to the total benefits paid out for the contract year whether paid out during the contract year or after it closed. One would certainly think the parties would bargain for obligations incurred during the contract year. The arrangement can co-exist with a method of limiting the liability for obligations incurred during the contract year, but for which

6

bills were not received until after the year had ended. It would, of course, be an unknown amount at the moment the year ended. The parties could and did negotiate for a limit on Beaumont's obligations which is the lesser of (i) the amount of said benefits, plus administrative costs of their payment; or (ii) the <u>Plan Benefit Extension Limit</u> ..."

If the Plan Benefit Limit had not been reached by the end of the contract year, it could possibly be reached when payment was made for bills received after the year was over. If so, it could apply whether the coverage was arrived at under (i) or (ii) of paragraph 3(g). It was a bargained for limitation on Beaumont's' liability for the contract year. There is no reason to believe that the language of paragraph 3(a) "benefits which become due or for Plan Participants while the agreement is in effect", does not include the benefits provided during the year for which bills were received after the expiration of the year.

The Court sees no reason to change or reconsider its earlier Memorandum and Opinion in this regard.

Hartford asks the Court to reconsider the amount of damages determined as well. The Court agrees and finds that the amount incurred before September 30, 1987, but not paid before that date is $346,421.70 rather than $371,868.41 as previously stated. Therefore, Judgment is appropriate for that lower amount.

And finally, Hartford asks this Court to exercise its discretion to waive the supersedeas bond pending appeal per Rule 62(d) of the Federal Rules of Civil Procedure. Having heard

7

evidence at trial of the financial structure of Hartford, this Court does waive said supersedeas bond.

SO ORDERED.

Done at Brownsville, Texas, this 13th day of January 1999.

                                                _____
                                                Stewart G. Newblatt
                                                United States District Judge
                                                Acting on Assignment